UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | | |
|---|---|---|
| United States of America, | ) | File No. 26-mj-00058 (NEB/DTS) |
| Plaintiff, | ) | |
| v. | ) | |
| Gillian Suzanne Etherington, | ) | Courtroom 9W<br>Minneapolis, Minnesota<br>Tuesday, April 28, 2026<br>11:00 a.m. |
| Defendant. | ) | |

---

BEFORE THE HONORABLE DAVID T. SCHULTZ
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

**STATUS CONFERENCE**

APPEARANCES:

For the Plaintiff: UNITED STATES ATTORNEY'S OFFICE
SPECIAL ASSISTANT U.S. ATTORNEY
BY: JESSICA A. STARK
600 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

For the Defendant: OFFICE OF THE FEDERAL DEFENDER
BY: AARON J. MORRISON
107 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

Court Reporter: RENEE A. ROGGE, RMR-CRR
United States District Courthouse
300 South Fourth Street, Box 1005
Minneapolis, Minnesota 55415

Proceedings recorded by mechanical stenography; Transcript produced by computer.

* * *

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURT: Good morning, everyone. Be seated.

Good morning, everyone. We are on the record in the matter of the United States versus Gillian Suzanne Etherington. MJ Number 26-58.

Counsel for the United States, note your appearance, please.

MS. STARK: Yes, Your Honor. Jessica Stark for the United States.

THE COURT: Turn your microphone on, please.

MS. STARK: Sorry. Jessica Stark for the United States, Your Honor.

THE COURT: Ms. Stark, are you an AUSA or a SAUSA?

MS. STARK: I'm a Special Assistant United States Attorney.

THE COURT: And where are you from?

MS. STARK: I came from the Eastern District of North Carolina, and I'm originally from Texas.

THE COURT: Okay. Thank you.

Counsel for Ms. Etherington.

MR. MORRISON: Good morning, Your Honor. Aaron Morrison appearing on behalf of Ms. Etherington, who is present in the courtroom.

THE COURT: All right. Good morning to the two of

you.

We're here pursuant to my order issued last week setting this status conference and notifying the parties that I was going to conduct an evidentiary hearing in this case.

Before I get into what I'm going to do and why, let me just ask, Is there anything that you need to update me on?

MS. STARK: No, Your Honor.

MR. MORRISON: No, Your Honor.

THE COURT: All right. Well, defendant has moved in effect for dismissal of this case through at least four motions, by my count. One is failure to state an offense; the second is a lack of probable cause; the third is suppression of all evidence seized as a result -- or all evidence generated as a result of what the defense claims is an unlawful arrest; and outrageous governmental conduct.

The first three of these motions are often or typically done on the papers, that is to say, the face of the charging instrument and perhaps including any documents necessarily embraced by the charging documents.

I say typically, but not always. I have cited in my order some authority, I did not cite all of it, for the proposition that the court, in appropriate circumstances, may look beyond the face of the charging document to

examine, in essence, whether the government has evidence to go forward with its case.

The defendant Mr. Morrison -- defendant's counsel Mr. Morrison has asked the court to do that in this case and look beyond the face of the charging instruments.

And even though that's an unusual request, I have determined that this is the case that fits that very description. This is the atypical situation in which it is appropriate that I do that.

So I'm going to hold the evidentiary hearing that's been requested by Mr. Morrison.

Mr. Morrison's request related specifically to the outrageous governmental conduct motion, but he also, perhaps informally, made that request in the papers supporting the motion to dismiss for failure to state an offense.

Regardless, I have determined that I am going to hold the evidentiary hearing as to all four of the motions that I have identified. Since all dispositive motions have been referred to me, upon conclusion of the evidentiary hearing, I will make a report and recommendation to District Judge Brasel.

But I want the government to be fully apprised of what's going on here.

Let me start by saying one of the motions that Mr. Morrison filed was for -- or was alleging duplicity, in

response to which the government filed a bill of particulars in this case. The bill of particulars is not verbatim a copy of the affidavit that was filed with the original criminal complaint charging Ms. Etherington with a felony, but it's pretty darn close.

That affidavit was filed by Agent Richard Berger. And the affidavit states in paragraph 4 that "This affidavit is based on my personal knowledge, as well as information that I have learned."

Now you, Ms. Stark, or the folks observing this hearing, may not be aware of this; but while I was on criminal duty in January, when a good number of these assault on federal officer cases were being filed by way of criminal complaint and we had affidavits from Mr. Berger, in all of them I became concerned with the veracity of the affidavits.

And so I questioned Mr. Berger about the basis for his affidavits, and specifically I asked him to outline the process by which he and other agents were conducting the information download at the Whipple Building.

It became quite clear, it is without doubt in the court's mind, that Mr. Berger does not, did not have any personal knowledge of the events described in the affidavits that he has submitted to this court as sworn affidavits. He swore that the affidavit was based on "personal knowledge,"

among other things. That's a false affidavit.

Moreover, I have examined the evidence on more than one occasion, both while I was on criminal duty and specifically in the context of this case. I have examined the evidence that is described in the affidavits. I'm going to walk through some of the affidavit description of the evidence, because the affidavit is basically the same as your bill of particulars.

In the affidavit at paragraph 6 and in your bill of particulars, it is stated that "Etherington bumped into a U.S.B.P. vehicle which caused the U.S.B.P. roving motorcade convoy to be separated."

The evidence that has been submitted to the court includes video evidence, which includes audio recordings, which indicate or seem to indicate that the convoy made a deliberate decision to separate, rather than somehow be caused to separate because of the actions of Ms. Etherington, although I suppose one could argue that it is accurate if the U.S.B.P. makes a decision that in response to driving conduct they are going to separate, that perhaps is an accurate description to use the word "caused."

But I don't want to mislead the government. The affidavit and the bill of particulars at least make it sound as if there wasn't a deliberate decision made by the U.S. Border Patrol.

The affidavit and the bill of particulars go on to state that "the driver of the Toyota," after the boxing in was accomplished, that "the driver of the Toyota then rammed the rear of one U.S.B.P. vehicle and drove away."

Bear with me for one second.

In the bill of particulars, that incident is described as "Etherington reversed her vehicle and aggressively drove away, ramming the rear of a U.S.B.P. vehicle with agents inside." That's a subtle, but different description of events.

I have reviewed the video. I would not fairly describe the impact between Ms. Etherington's vehicle and the U.S. Border Patrol vehicle as involving any ramming.

In addition, the affidavit states, as to the time of the arrest, "U.S.B.P. agents exited their cars and commanded Etherington to exit the Toyota. Etherington did not comply with U.S.B.P. commands and refused to exit the car."

That does not appear to the court's review to be borne out by the videos of the incident.

Now, 18 U.S.C. Section 111(a)(1) requires that the defendant use force directed toward the border patrol agents. Based on what I have seen to date, it is seriously questionable whether that was done.

In fairness to the government, your allegations in

the affidavit and in the bill of particulars would meet that description, potentially.

And so because there is no evidence currently in front of this court by which I would say a reasonable jury could find beyond a reasonable doubt that that was done, I'm going to give the government a chance through this evidentiary hearing to show that in fact they have a basis on which to proceed and an offense that has been stated.

So we're going to hold an evidentiary hearing. At that time if you intend to proceed with an assertion that according to, for example, the affidavit Ms. Etherington was "driving erratically and swerving in and out of traffic" as she followed the border patrol convoy, then you are going to have to show that there's evidence for that.

Right now the only evidence I have is in the bill of particulars or in the affidavit. The bill of particulars is not evidence. I do not believe the affidavit for the reasons that I've stated. So there is in fact no evidence of that.

So if you intend to proceed, you will have to produce some evidence. I will not accept proffers at the evidentiary hearing, nor will I admit hearsay. All right?

So I suspect that in order to do this you will have to have some border patrol agents who can come here and testify live in this court as to their own personal

observations, not what they think some other agents saw, not what some other agent said, but what they observed.

How much time does the government need in order to be able to put forth such evidence as it deems meets this?

MS. STARK: Yes, Your Honor. The government would request eight weeks and the reason being is because obviously now I have a lot more context to the scope. Originally, I was going to ask for two to three agents, but based off of everything I think I need probably four to five.

There are agents that have a long history of secret service details and border patrol; and in order to thoroughly be able to do their *Giglio* checks and provide that to Mr. Morrison, I do believe that I would need a full eight weeks to be able to achieve that, Your Honor.

THE COURT: Mr. Morrison.

MR. MORRISON: I'm going to object to eight weeks. I understand they might need some time, but that's, that's unreasonable. We do complicated, far more complicated motion hearings than this one with many agents in the regular course of business. So I would object, Your Honor.

THE COURT: Very well.

I think eight weeks is excessive. The case has been on the government's radar for quite some time. I highly doubt that anything I have said today comes as much

of a surprise to the government. The previous SAUSA who was here, Mr. Arboleda, certainly understood the court's skepticism.

So I will give the government four weeks. We will schedule the hearing for -- I'll issue an order for the date, but it will be approximately four weeks from today.

Anything else, Ms. Stark?

MS. STARK: No, Your Honor.

THE COURT: All right. Mr. Morrison, anything further?

MR. MORRISON: No, Your Honor. Thank you.

THE COURT: All right. Thank you, everyone. We're in recess.

(Court adjourned at 11:19 a.m., 04-28-2026.)

* * *

I, Renee A. Rogge, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by: /s/Renee A. Rogge
Renee A. Rogge, RMR-CRR